UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEVEN SMITH, | ) |
|         Plaintiff | ) |
| v. | ) No. 1:16-cv-00567-JHR |
| NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security*, | ) |
|         Defendant | ) |

### *MEMORANDUM DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) rejecting the opinion of his treating physician's assistant ("PA"), F. Tim Garland, PA-C, (ii) minimizing the import of Global Assessment of Functioning ("GAF") scores[2] that PA Garland consistently assessed, and (iii) relying on the opinions of agency nonexamining

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 21.

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). Nonetheless, I assess the supportability of the ALJ's decision based on the evidence available to her at that time.

1

consultants. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-10.[3] After careful consideration, I find no error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of chronic obstructive pulmonary disease ("COPD"), a learning disability, a personality disorder, and affective, anxiety-related, and substance use disorders, Finding 2, Record at 12; that he had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except that he needed to avoid concentrated exposure to extremes of temperature and pulmonary irritants, could understand, remember, and carry out simple tasks, and was limited to object-oriented tasks, with only occasional work-related interactions with supervisors and coworkers and no interaction with the general public, Finding 4, *id*. at 16; that, considering his age (born on March 6, 1970, and in the age category "younger individual"), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 19; and that he, therefore, had not been disabled at any time from June 25, 2013, the date he filed his SSI application, through the date of the decision, October 15, 2015, Finding 10, *id*. at 20-21. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[3] At oral argument, the plaintiff's counsel withdrew his client's arguments challenging the ALJ's reliance on the testimony of a vocational expert present at hearing. Those arguments commence on line 3 of page 10 of his itemized statement of errors and run through the "Conclusion" subheading on page 14. *See* Statement of Errors at 10-14.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Asserted Errors in ALJ's Handling of Garland Opinion

PA Garland supplied a letter and responses to a mental RFC questionnaire dated August 25, 2015. *See* Record at 507-12. In his letter, he stated that he had treated the plaintiff at Kennebec Behavioral Health ("KBH") for medication management for mental health issues since August 3, 2011, and that the plaintiff returned monthly for follow-up visits. *See id*. at 507. He noted:

> Anxiety issues prevail and have prevented [the plaintiff] from activities or work involving moderate groups of people. Interactions with people other than family are extremely limited. It is unlikely that a suitable work environment exists with his current symptoms.
>
> There has been some stabilization of his symptoms with current treatment but prognosis is poor that he will be able to function in the work environment within the next year and then questionable.

*Id*.

In his responses to the mental RFC questionnaire, PA Garland indicated that the plaintiff had a current GAF score of 44, which was also his highest GAF score during the prior year. *See id*. at 508.[4] He deemed the plaintiff unable to meet competitive standards for, or seriously limited in performing, 11 of 16 mental abilities and aptitudes needed to do unskilled work, including maintaining regular attendance and being punctual within customary, usually strict, tolerances, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically-based symptoms, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes. *See id*. at 510.

He added that the plaintiff was unable to meet competitive standards in interacting appropriately with the general public and seriously limited in maintaining socially appropriate behavior, explaining, "General Anxiety Disorder around strangers or groups resulting in mood swings and impulse control difficulty." *Id*. at 511.

The ALJ gave the Garland opinion "minimal/less probative weight[,]" explaining:

> Although [PA Garland], who has treated the [plaintiff] at [KBH] on multiple occasions, assessed [him] GAF's in the 40's, which could be consistent with marked symptoms and/or marked functional limitations, specifically indicating in an assessment dated August 25, 2015, that [he] had serious to unable [sic] to meet competitive standard level of functioning in multiple areas, this is inconsistent with the just discussed record and the aforementioned medical evidence[.]

*Id*. at 18-19 (footnote and citations omitted). The ALJ added:

> A GAF is not a precise functional assessment, which describes specific mental work related limitations. A GAF between 41-50 can be based upon subjective, unsubstantiated complaints such as having no friends, inability to hold a job,

---

[4] A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted).

4

alleged panic attacks, hallucinations, obsessions, or delusions (which have not been observed by the mental health provider), sleep problems, unemployment, inability to obtain health insurance, recent deaths, family relationship problems, or sickness, housing problems, financial problems, substance abuse, and/or criminal problems. The score can be based on behaviors which have little or no relationship to occupational functioning (e.g., [the DSM-IV-TR] specifically notes that "frequent shoplifting" can be a basis for a GAF rating in this range). The GAF under 51 does not have to be based upon actual mental status examination findings or psychological testing. Moreover, low GAF scores alone do not compel a finding of disability. See 65 Fed. Reg. 50746, 50764-65, noting that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in [SSA] mental disorders listings."

It should be noted that GAF scores are no longer used to assess severity in the current DSM-V.

*Id*. at 18 n.7 (underscore omitted).

The plaintiff complains that the ALJ's treatment of the Garland opinion is deficient, warranting remand, because she (i) failed to explain how the opinion was inconsistent with other record evidence, (ii) did not adequately address the import of the GAF scores, and (iii) ignored factors that weighed in favor of adoption of the opinion pursuant to Social Security Ruling 06-03p ("SSR 06-3p"). *See* Statement of Errors at 6-7.

For the reasons that follow, I find no error in the ALJ's handling of the Garland opinion.

### 1. Failure To Explain How Opinion Was Inconsistent with Record

The plaintiff first faults the ALJ for offering a "vague, generic" comment that the Garland opinion was inconsistent with the record, failing to explain how this was so. *See id.* at 6. At oral argument, his counsel further contended that it was difficult to see how the Garland opinion could be inconsistent with the record when the record consists almost entirely of PA Garland's treatment notes. The first point is unavailing because the ALJ incorporated by reference a prior detailed discussion of the record evidence. The second point is also unavailing because the ALJ reasonably

viewed the underlying evidence, including that authored by PA Garland, as inconsistent with the Garland opinion.

As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 4-5, in addressing the Garland opinion, the ALJ incorporated by reference a prior detailed discussion of the record evidence, including the following observations:

1. After November 2013, the plaintiff had "several unremarkable mental status examination findings" at KBH, with "reported adequate concentration, memory, insight, insight and judgment, well oriented, lack of suicidal o[r] homicidal ideation, appropriate speech, dress and grooming and no evidence of psychosis[.]" Record at 18.

2. The plaintiff "missed or cancelled several appointments" at KBH in early to mid-2014 and "had a good response to medication for anger issues and with respect to his mood/affect later that year and into 2015." *Id*.

3. A function report submitted by the plaintiff's spouse indicated that "he was able to take care of his personal needs, that he watched television, that he walked and did some small meal preparation and housework[.]" *Id*.

4. Agency examining consultant Gary Rasmussen, Ph.D., indicated in a November 21, 2013, report that the plaintiff "took long walks and . . . visited with friends[,]" and the plaintiff acknowledged at hearing that had friends with whom he smoked marijuana. *Id*.; *see also id*. at 447.

5. Agency nonexamining consultants Lewis F. Lester, Ph.D., in an initial review dated November 25, 2013, and Stephen Kleinman, M.D., in a reconsideration review dated June 18, 2014, found that the plaintiff could perform simple tasks for two-hour periods over a normal

workday and workweek and adapt to routine changes and, while he could not interact with the public, could interact with supervisors and coworkers in a normal work setting. *See id*.; *see also id*. at 60-61, 76-77. Dr. Kleinman had the benefit of review of, *inter alia*, the Rasmussen report and KBH treatment notes through May 2014. *See id*. at 18; *see also id*. at 70, 73.

The ALJ reasonably characterized this evidence as inconsistent with PA Garland's opinion that the plaintiff had marked restrictions, precluding his employment. Remand, accordingly, is unwarranted based on this point of error.

### 2. Minimization of GAF Scores

The plaintiff next asserts that the ALJ erred in her handling of the GAF scores that PA Garland assessed, noting that, although GAF scores are no longer used in the DSM-V, the commissioner, in a 2013 administrative memorandum, directed ALJs to continue to address them. *See* Statement of Errors at 6; U.S. Soc. Sec. Admin., AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (July 22, 2013) ("Admin. Memo. 13066"). She cites *Lopez-Lopez v. Colvin*, 138 F. Supp.3d 96 (D. Mass. 2015), *see* Statement of Errors at 6, in which the court found reversible error in an ALJ's failure to mention a claimant's numerous GAF scores of 50 over the relevant time period, *see Lopez-Lopez*, 138 F. Supp.3d at 110-13.

At oral argument, the plaintiff's counsel posited that GAF scores play a particularly important role in this case because, although individual scores are one-time snapshots, PA Garland consistently assessed scores in the 40s over a roughly four-year period, painting a longitudinal picture of an individual with serious symptoms.

I find no error. Unlike the ALJ in *Lopez-Lopez*, the ALJ in this case acknowledged that, on multiple occasions, PA Garland assessed GAFs in the 40s, "which could be consistent with

7

marked symptoms and/or marked functional limitations[,]" but indicated that PA Garland's opinion that the plaintiff did in fact have such marked functional limitations was inconsistent with other evidence of record. Record at 18-19. She correctly noted both that GAF scores do not necessarily reflect deficits in occupational functioning and that low GAF scores alone do not compel a finding of disability. *See id*. at 18 n.7; Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (The GAF scale "does not have a direct correlation to the severity requirements in [the commissioner's] mental disorders listings."); *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *6 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("because GAF scores can be based on behaviors that have little or no relationship to occupational functioning, ALJ properly discounted importance of such scores when, in her view, claimant's relatively normal activities of daily living and other evidence revealed an ability to do what he chose to do") (citation and internal quotation marks omitted).

In so doing, she complied with the requirements of the administrative memorandum, which requires that adjudicators treat GAF scores as opinion evidence but does not direct that they be given any particular weight. *See* Admin. Memo. 13066 §§ A, E. For the reasons discussed below, I find that the ALJ's handling of PA Garland's opinion, including his GAF scores, passes muster.

### 3. Treatment of Garland Opinion Pursuant to SSR 06-03p

As the plaintiff acknowledges, *see* Statement of Errors at 7, the ALJ's handling of the Garland opinion was governed by SSR 06-03p. Garland, a physician's assistant, was not an "acceptable medical source" as defined by Social Security regulations in effect as of the date of the decision. 20 C.F.R. § 416.927(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the

nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); *id*. § 416.913(a) (omitting physician's assistants from list of "acceptable medical sources").

SSR 06-03p provides, in relevant part, "Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 329. These factors include:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

*Id*. at 329-30.

The plaintiff complains that the ALJ failed to consider the most relevant factors, namely, PA Garland's four-year treatment relationship with him and detailed explanations for his findings. *See* Statement of Errors at 7.

Yet, as the commissioner rejoins, *see* Opposition at 4, SSR 06-03p does not require discussion of every possibly relevant factor. Rather, an ALJ need only "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . .

9

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p at 331.

The ALJ did so, explaining that, although PA Garland assessed GAF scores consistent with marked functional limitations and provided an opinion that the plaintiff did in fact have such marked limitations, she deemed those findings inconsistent with the record as a whole. *See* Record at 18-19; *see also, e.g., Sheldon v. Colvin*, No. 2:13-CV-315-DBH, 2014 WL 3533376, at *6, *8 (D. Me. July 15, 2014) (ALJ properly relied on claimant's "relatively normal activities of daily living and other evidence" rather than on GAF scores ranging from 40 to 55). She further correctly noted that low GAF scores do not necessarily reflect limitations in occupational functioning and do not compel a finding of disability, and that GAF scores are no longer used in the DSM-V. *See id*. at 18 n.7. Nothing more was required.[5]

### 4. Reliance on Opinions of Agency Nonexamining Consultants

The ALJ deemed the Lester and Kleinman opinions "generally consistent with and supported by the just discussed record and aforementioned medical evidence[,]" entitling them "to significant probative weight with respect thereto." *Id*. at 18 (citations omitted).

The plaintiff contends that the ALJ's reliance on those opinions was misplaced because neither Dr. Lester nor Dr. Kleinman had the benefit of review of the Garland opinion. *See* Statement of Errors at 9; *see also, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information

---

[5] The plaintiff further contends that the ALJ erred in rejecting PA Garland's opinion that he had medication side effects of dizziness, drowsiness, and unsteadiness. *See* Statement of Errors at 5, 8; Record at 508. The plaintiff does not identify functional limitations that he contends were omitted as a result. In any event, to the extent that PA Garland factored any such limitations into his opinion, *see id*. at 510-12, the ALJ supportably discounted the opinion for the reasons set forth herein.

10

provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

However, as the commissioner rejoins, *see* Opposition at 8, an opinion of an agency nonexamining consultant who did not have the benefit of review of a treating source's later-submitted opinion may yet serve as substantial evidence of a claimant's RFC when the ALJ supportably rejects that treating source's opinion, *see, e.g.*, *Vining v. Astrue*, 720 F. Supp.2d 126, 133 (D. Me. 2010) ("For reasons described below, the [ALJ] supportably discredited Dr. Smith's mental RFC assessment. Accordingly, the fact that Dr. Lester did not see it has no bearing on the question of whether his own report can serve as substantial evidence of the plaintiff's mental RFC.").

Remand, accordingly, is not warranted on the basis of this point of error.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 26th day of March, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge